IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KARLI S.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:24-cv-01161-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

      Karli S. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

---

      [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

I.  **PLAINTIFF'S APPLICATION**

Plaintiff was twenty-nine years old on February 1, 2021, the alleged disability onset date.[2] (Tr. 57.) In her application, Plaintiff alleged disability based on a panic disorder, post-traumatic stress disorder ("PTSD"), memory loss, anxiety, gastroparesis, a heart attack, and stroke. (*Id*.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on October 3, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id*. at 64, 75, 99.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held before an ALJ on April 11, 2024. (*Id*. at 32-56.) On April 23, 2024, the ALJ issued a written decision denying Plaintiff's application. (*Id*. at 17-26.) On May 14, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id*. at 1-6.) Plaintiff now seeks judicial review of that decision.

II.  **THE SEQUENTIAL PROCESS**

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which [s]he filed h[er] application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

PAGE 3 – OPINION AND ORDER

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 17-26.) At step one, the ALJ concluded that while Plaintiff had engaged in substantial gainful activity since February 1, 2021, the alleged onset date, there was a twelve-month period during which Plaintiff did not engage in substantial gainful activity. (*Id.* at 19.) At step two, the ALJ found that Plaintiff suffers from the following severe, medically determinable impairments: PTSD, major depressive disorder (severe without psychotic features), panic disorder, and generalized anxiety disorder. (*Id.* at 20.) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 20-21.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can persist at simple, routine, repetitive tasks, (2) Plaintiff can make simple work-related decisions, (3) Plaintiff can perform work with few if any changes in the workplace, and no assembly line pace work, and (4) Plaintiff can tolerate occasional interaction with coworkers and the general public. (*Id*. at 21-22.)

At step four, the ALJ found that Plaintiff could no longer perform her past relevant work as a waitress. (*Id*. at 24.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, such as a housekeeping cleaner, cleaner II, and wall cleaner. (*Id*. at 25-26.)

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to provide specific, clear, and convincing reasons to discount her subjective symptom testimony; and (2) improperly discounting the medical opinions of Anne Harper, Ph.D. ("Dr. Harper"). (Pl.'s Opening Br. ("Pl.'s Br.") at 2-14, ECF No. 11.)

### I.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff argues that the ALJ failed to provide specific, clear, and convincing reasons to discount her symptom testimony about her mental health disorders. (Pl.'s Br. at 2-8.)

####    A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

      **B.**      **Plaintiff's Testimony**

Plaintiff testified at the hearing that she could not work on a regular, full-time basis because of her panic disorder, anxiety, and memory and concentration issues. (Tr. 43-44.) She explained that social situations and speaking with people had become progressively more difficult, to the point where she has panic attacks while grocery shopping, she avoids school functions for her children, she has a freeze response in social situations, and she has periods of "crying spells" and shutting down. (*Id*. at 44.) She testified that she currently takes Sertraline, Lorazepam, and a third medication for sleeping. (*Id*. at 39.) When asked about side effects, she stated that her medications cause migraines and headaches. (*Id*.)

With respect to work experience, Plaintiff testified that she worked for DoorDash as a delivery driver in 2021, and that she was currently providing twenty hours per week of childcare for her sister's children. (*Id*.) She also was working "under the table" as a housecleaner for a few hours per week, but she stopped because the situation was not safe. (*Id*. at 42-43.)

When asked about her ability to do such activities as grocery shopping or attending parent-teacher conferences at her children's school, she stated that she avoids conferences if possible, and that she places online grocery orders and then picks up the items. (*Id*. at 45.) She further testified that she takes Lorazepam when she feels a panic attack building in response to the above social situations. (*Id*.)

PAGE 6 – OPINION AND ORDER

When asked about her typical day, Plaintiff testified that she has difficulties getting dressed and ready for the day, getting organized, and running errands. (*Id*. at 45-46.) Plaintiff stated that while she takes care of her three children, attends appointments, and does "things for the house," it takes her a long time. (*Id*. at 46.) She further testified that she cooks meals, but it is difficult for her to remember recipes so a majority of the foods they eat are fruits, vegetables, and prepared foods. (*Id*. at 46-47.)

Plaintiff explained that sometimes she will freeze, shut down, and be unable to speak when she gets overwhelmed. (*Id*. at 48.) While this condition has no specific trigger, she stated that it happens every time she has to talk with people or go out in public. (*Id.* at 50.) When this occurs, she has to lie down or sit in the dark with her hands over her ears and eyes in order to prevent a "full-blown panic attack." (*Id*. at 50.)

When asked about her previous activity as a Door Dash delivery driver, Plaintiff testified that she worked while she was pregnant and worked until the week before she was due. (*Id*. at 51-52.) She testified that while it was difficult going inside restaurants to pick up orders due to her anxiety, she was able to do it because she did not have to deal with people and was only required to "pick up and deliver." (*Id*. at 52.) With respect to providing childcare for her sister, she explained that she watches her sister's two children, in addition to her three children, usually from Friday to Sunday while her sister works. (*Id*. at 51; *see also* Tr, 39, estimating that she watches "each child" for twenty hours per week).

 C. **The ALJ's Evaluation of Plaintiff's Testimony**

The ALJ discounted Plaintiff's symptom testimony based in part on inconsistencies between the alleged severity of Plaintiff's mental health disorders and her reported daily activities. (*Id.* at 23.) The ALJ considered Plaintiff's ability to care for her household with three

children, drive, attend to her personal care, prepare meals, perform household chores, grocery shop, care for pets, handle her finances, engage in hobbies, work at substantial gainful activity, and go to the gym. (*Id.*, citing *id.* at 221, 242, 548, 902, 1064, 1090; *see also id.* at 1147, 1182, 1196, further reflecting that Plaintiff goes to church and the gym.) The ALJ highlighted that Plaintiff worked as a Door Dash delivery driver after the alleged onset date, and engaged in substantial gainful activity by caring for her sister's children, for which she received compensation from the Department of Human Services ("DHS").[3] (*Id.* at 19, citing *id.* at 548, 1064; *see also id.* at 40, Plaintiff testified that DHS paid her up to $1,600 per month for watching her sister's children.) The ALJ further noted that Plaintiff worked as a housekeeper for a few hours per week, from October 2021 through November 2023. (*Id.*; *see also id.* at 42, Plaintiff testified that she performed "under the table" housekeeping work for a few hours per week.)

In light of this record, the ALJ found that Plaintiff had only moderate difficulties in interacting with others, noting that she reported no problems getting along with her family and friends. (*Id.* at 20, citing *id.* at 225, 246.) The ALJ also cited several examples from Plaintiff's mental status examinations, reflecting that she presented as alert and oriented, with intact memory, a sufficient fund of knowledge, goal-directed thought processes, intact thought content, and a pleasant and cooperative demeanor with intact speech, language, a normal ability to communicate, and normal behavior. (*Id.* at 20, citing several medical records; *see also id.* at 22-23, noting that at Plaintiff's psychological evaluations, she was alert and oriented, appropriately dressed with good grooming and hygiene, and presented with an appropriate attitude and behavior, despite describing her mood as depressed and anxious).

---

[3] The ALJ noted that Plaintiff's sister also received DHS benefits for watching Plaintiff's children up to half-time per week. (Tr. 19.)

PAGE 8 – OPINION AND ORDER

**D.     Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments that might reasonably produce the symptoms alleged. (*See* Tr. 22, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ met that standard here.

Plaintiff argues that her ability to perform the cited daily activities is not inconsistent with her symptom testimony that she isolated at home because of the severity of her mental disorders. (Pl.'s Br. at 13-14.) Notably, Plaintiff does not directly address the ALJ's evaluation of her ability to work as a DoorDash driver, childcare provider, and house cleaner after her alleged onset date. (*See* Pl.'s Br. at 13, arguing that the ALJ mischaracterized her testimony regarding self-care and her ability to prepare meals or go out in public, but not directly addressing her work activities). Plaintiff's ability to work at these jobs during the relevant time period—especially as a DoorDash driver which requires entering restaurants to pick up orders—was a clear and convincing reason to discount her testimony about the severity of her mental health limitations, including reports of panic attacks when she goes out in public.[4] *See Ford v. Saul*, 950 F.3d 1141,

---

[4] Substantial evidence in the record supported the ALJ's findings about Plaintiff's work history. (*See, e.g.*, Tr. 42, Plaintiff testified that she performed "under the table" house cleaning work for a few hours per week; *id.* at 50-51, Plaintiff testified that she watches her sister's two young children from Friday night to Sunday night, along with her own three children; *id.* at 51-52, Plaintiff testified that she worked for DoorDash, her employment ended only because she gave birth, and the employment worked out because she only had to "pick up and deliver" and "didn't really have to deal with people"). The Commissioner highlights Plaintiff's testimony that she was performing twenty hours of childcare per week "for each child." (Def.'s Br. at 11, citing Tr. 37, ECF No. 14.) Although Plaintiff's initial answer suggested that DHS may have been

1156 (9th Cir. 2020) ("An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled[.]" (citing *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992))); *see also Nadon v. Bisignano*, 145 F.4th 1133, 1136 (9th Cir. 2025) ("[T]he ALJ did not err by considering [the plaintiff]'s work as a personal care attendant. An ALJ is permitted to consider any work done by a claimant when evaluating a disability claim, regardless of whether the work constitutes substantial gainful activity." (first citing *Ford*, 950 F.3d at 1156; and then citing 20 C.F.R. § 404.1571)); *Resco v. O'Malley*, No. 23-35177, 2024 WL 3177785, at *2 (9th Cir. June 26, 2024) (holding that the plaintiff's "contention that the ALJ improperly discounted her symptom testimony is unavailing where "the ALJ explained that [the plaintiff]'s symptom testimony was undermined by her performing non-sedentary, part-time work during the relevant period, and by evidence that she could return to work" (citing *Ford*, 950 F.3d at 1156)); *Scavone v. O'Malley*, No. 23-35132, 2024 WL 1553695, at *2 (9th Cir. Apr. 10, 2024) ("The ALJ also reasonably concluded that [the plaintiff]'s more extreme claims about his symptoms and limitations are inconsistent with . . . [the plaintiff]'s ability to occasionally work part time." (citing, as relevant, *Ford*, 950 F.3d at 1156)); *Henry O. v. Kijakazi*, No. 4:20-cv-05141-MKD, 2022 WL 2902732, at *7 (E.D. Wash. May 3, 2022) (finding that "the ALJ reasonably concluded that Plaintiff's activities of daily living were inconsistent with his symptom claims" and "supported by substantial evidence" where the plaintiff had "returned to working at a substantial gainful activity level" during the relevant time period).

///

---

paying her to watch her sister's children for forty hours per week (twenty hours for each child), the record before the Court reflects that when the ALJ sought clarification that Plaintiff was providing twenty hours of childcare "total," Plaintiff responded, "[y]es, I believe so." (Tr. 39-40.)

PAGE 10 – OPINION AND ORDER

Nor did the ALJ err in discounting the severity of Plaintiff's limitations on the ground that she made frequent visits to her gym. (Tr. 20.) Although Plaintiff argues that she only visited the gym's massage and light therapy room, she testified that she checks in at the front desk, which is inconsistent with her testimony of extreme social limitations. (*See id.* at 48-49, Plaintiff testified that she regularly visits Planet Fitness and is required to check in her phone at the front desk; *see also id.* at 907, Plaintiff reported during a psychological evaluation that she was "[c]apable of attending to all activities of daily living on [her] own"). It was reasonable for the ALJ to conclude that Plaintiff's ability to visit Planet Fitness on a regular basis, along with her other activities of daily living, undermined her claims of panic attacks in public places.

The Court finds that Plaintiff's ability to work at three different jobs and go to the gym were clear and convincing reasons, supported by substantial evidence, to discount her symptom testimony, and therefore the ALJ did not err in evaluating her symptom testimony.

## II.   MEDICAL OPINION EVIDENCE

Plaintiff argues that substantial evidence does not support the ALJ's explanation for discounting the opinions of Dr. Harper, Plaintiff's licensed professional counselor. (Pl.'s Br. at 2-8.)

### A.   Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102,

1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

PAGE 12 – OPINION AND ORDER

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

B.   **Analysis**

The Court concludes that substantial evidence supports the ALJ's evaluation of Dr. Harper's opinions.

Dr. Harper had been serving as Plaintiff's mental health provider since October 29, 2021, visiting with Plaintiff weekly for almost two years. (Tr. 293, 913.) In her first medical opinion, Dr. Harper stated that Plaintiff reportedly suffered from, among other things, intrusive thoughts, constant feelings of flight or flight response, emotional dysregulation, flashbacks and nightmares, broken sleep, frequent heightened anxiety, decreased interest in activities, hypervigilance, and dissociation. (*Id*. at 293.) Dr. Harper further stated that Plaintiff's ability to work would be impacted by her symptoms, namely that she is triggered by certain settings, sounds, and comments, as well as experiencing difficulty with her memory and dissociation when under stress. (*Id*. at 294.)

In her second opinion, Dr. Harper reported that Plaintiff continued to suffer from her earlier reported symptoms, and Plaintiff was not able to work as a result of experiencing daily

panic in stress inducing places, such as public spaces. (*Id*. at 914.) Dr. Harper also opined that Plaintiff had marked and extreme limitations in her ability to understand, remember, and carry out simple instructions, make simple work-related judgments, interact appropriately with coworkers, supervisors, and the public, and respond appropriately to changes in a routine work setting. (*Id*. at 916-17.) Dr. Harper based these proffered limitations on Plaintiff's reports of hypervigilance, dissociative symptoms, and severe panic and "freezing." (*Id*. at 917.) It was Dr. Harper's opinion based on Plaintiff's reports that she would need to miss four or more days of work per month. (*Id*. at 919.)

The ALJ found Dr. Harper's opinion "unpersuasive" because it was based "almost entirely" on Plaintiff's self-reports, as Dr. Harper acknowledged throughout her opinions, and because Dr. Harper's proffered limitations were inconsistent with Plaintiff's longitudinal medical records which were "almost entirely benign." (*Id*. at 24.) Plaintiff argues that the ALJ improperly discounted Dr. Harper's opinions based on Plaintiff's self-reports because mental health opinions often rely on self-reports, and that the ALJ ignored non-benign findings in Plaintiff's medical records. (Pl.'s Br. at 4-7.)

First, it is well settled that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (simplified); *see also Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on [the plaintiff]'s subjective characterization of her symptoms. As the ALJ determined that [the plaintiff]'s description of her limitations was not

PAGE 14 – OPINION AND ORDER

entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

Plaintiff is correct that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). However, in *Buck*, as in many subsequent cases citing *Buck*, the mental health evaluators also based their opinions on some objective measure, such as clinical interviews or mental status evaluations. *See, e.g.*, *id.* ("[The mental health evaluator]'s opinion was based in part on [the claimant]'s self-report that he had trouble keeping a job. However, [the evaluator] also conducted a clinical interview and a mental status evaluation. These are objective measures and cannot be discounted as a 'self-report.'"); *see also Neri v. Comm'r of Soc. Sec.*, No. 1:21-cv-01235-SAB, 2022 WL 16856160, at *16 n.13 (E.D. Cal. Nov. 10, 2022) ("*Buck* . . . is inapposite to the instant matter. In *Buck*, the Ninth Circuit held a court should not reject a psychiatric opinion that is based in part on the patient's self-report, as well as on the clinician's observations, and objective measures such as a clinical interview and mental status evaluation. Here, by contrast, the ALJ not only rejected [the evaluator's] opinion because it relied heavily (rather than in part) upon Plaintiff's and his sister's allegations, but also because the opinion was internally inconsistent as well as inconsistent with Plaintiff's reported activities and the medical record[.]") (citations omitted); *Mona Faye C. v. Comm'r of Soc. Sec.*, No. 121CV00140DCNREP, 2022 WL 16639331, at *6 n.4 (D. Idaho Aug. 22, 2022) ("[I]mportantly, *Buck* did not overturn the well-settled rule that a physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted by the ALJ. Instead, *Buck* clarified that an ALJ errs when she relies on a claimant's discredited self-reports to reject the 'objective measures' of a

PAGE 15 – OPINION AND ORDER

psychologist's evaluation." (simplified) (first citing *Buck*, 869 F.3d at 1049; and then citing *Morgan*, 169 F.3d at 602)), *report and recommendation* adopted, 2022 WL 16635577 (D. Idaho Nov. 2, 2022); *Aniya R. v. Comm'r of Soc. Sec.*, No. C21-1159 TLF, 2022 WL 2541100, at *3 (W.D. Wash. June 2, 2022) ("[T]he ALJ did not err in giving little weight to [the examining psychologist's] assessed limitations to the extent they were based on Plaintiff's properly discounted [mental health] symptom allegations.").

Here, Dr. Harper highlighted several times in her reports that her opinions were based on Plaintiff's subjective self-reports. (*See, e.g.*, Tr. 293-94, 378-79, 542-43, 914, 917-18, Dr. Harper prefaced every opinion with "client complains of," "client reports," "client describes," or "according to [Plaintiff]"). Where Dr. Harper based her opinions on Plaintiff's self-reports and not on objective measures, the Court finds that the ALJ's discounting of the opinions on that ground was not error.

Even if the ALJ erred in discounting Dr. Harper's opinions because they were based on Plaintiff's self-reports, the ALJ also discounted Dr. Harper's opinions because they were unsupported by the longitudinal record. (*Id.* at 20-21.) The ALJ cited substantial evidence in the record that Plaintiff presented at appointments with variable mood and affect but otherwise as alert and oriented with intact memory, a sufficient fund of knowledge, goal-directed thought processes, intact thought content, a pleasant and cooperative demeanor, intact speech, sufficient language, a normal ability to communicate, normal behavior, intact attention and concentration, fair to good insight and judgment, and a well-groomed and well-kept appearance with appropriate dress. (*Id.* at 20-21, citing dozens of medical records).

For these reasons, the Court finds that the ALJ adequately addressed the supportability and consistency of Dr. Harper's opinions, and substantial evidence supported the ALJ's

interpretation.[5] *See Stanton v. O'Malley*, No. 23-35474, 2024 WL 4224622, at *1 (9th Cir. Sept. 18, 2024) ("An ALJ must assess the persuasiveness of the relevant medical opinions and explain how she considered the supportability and consistency factors. As to all four physicians, the ALJ sufficiently explained her analysis, and her conclusions are supported by substantial evidence in the record." (first citing 20 C.F.R. § 416.920c(a)-(b); and then citing *Woods*, 32 F.4th at 791-92)); *see also Dunning v. Colvin*, No. 24-803, 2025 WL 262338, at *1 (9th Cir. Jan. 22, 2025) ("The ALJ determines the persuasiveness of medical opinions. The most important factors when evaluating persuasiveness of medical opinions are supportability and consistency. The ALJ found that part of [the] opinion was not persuasive because certain opinions . . . were not supported by objective evidence and were inconsistent with other evidence in the record. . . . These determinations are supported by substantial evidence." (citing 20 C.F.R. § 404.1520c(a)).

Although Plaintiff weighs the evidence differently, substantial evidence in the record supports the ALJ's interpretation and therefore the Court "must uphold" the ALJ's opinion. *See Steirer v. Kijakazi*, No. 22-16792, 2023 WL 6999450, at *1 (9th Cir. Oct. 24, 2023) ("The ALJ did not err. The ALJ evaluated the consistency and supportability of the opinions by weighing each against[, *inter alia*,] objective clinical findings[.] Based on the ALJ's interpretation of the evidence, she rejected the medical opinions . . . as extreme. Because the record supports her interpretation, we must uphold the ALJ's decision." (simplified) (first citing 20 C.F.R. § 416.920c(a); then quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); then citing *Ford*, 950 F.3d at 1154-55; and then citing *Garrison*, 759 F.3d at 1012)); *Ahearn v. Saul*, 988

---

[5] The Court also notes that although Dr. Harper included more extreme limitations in her check-the-box form, her narrative opinions opined only that Plaintiff's "ability to do work related to physical or mental activities . . . in a work setting *might* be impacted by the impairment to her functioning that *client reports* to constantly experience." (Tr. 293-94, 378-79, 542-43) (emphasis added).

PAGE 17 – OPINION AND ORDER

F.3d 1111, 1115-16 (9th Cir. 2021) ("When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." (quoting *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001))).

For these reasons, the Court finds that the ALJ did not commit harmful error in evaluating Dr. Harper's opinions.

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 28th day of October, 2025.

*Stacie F. Beckerman*
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge